Good morning your honors, Thomas Roach appearing on behalf of appellant Robert Tollstam. Honor, this case is a social security disability case. It's a little bit unusual in that Mr. Tollstam was found to be disabled for what's known as a closed period of time. In other words, the judge found that his disability began when he said it began in October of 2000 but then found that it ceased four years later in 2004, October of 2004. In reaching this conclusion, he rejected Mr. Tollstam's treating psychiatrist. A psychiatrist who had treated him for three years on a basis of every two to four weeks. A psychiatrist who prescribed his medications. A psychiatrist who was treating him through the workers' compensation system because Mr. Tollstam had no medical insurance and he was injured on the job. So all of his medical treatment was through workers' comp. And so his psychiatrist, Dr. Corey, was submitting reports to the workers' comp insurance carrier. Now, social security never contacted Dr. Corey and asked him for an opinion and instead sent him out to one of their doctors for an evaluation. Contrary to the social security law which says when a person has a treating doctor, that treating doctor is the preferred source if they want an examination. Anyway... Is that right? That is to say, if someone has a treating physician, the social security administration is not allowed to send somebody out for an examination by an independent doctor employed by the social security administration? That can't be right. The regulation doesn't say it's not allowed. The regulation says... Because we see that all the time. Oh, unfortunately we do, Your Honor. But the regulation says if there is a treating source who is willing to do the examination for the amount of money that social security is willing to pay and they are qualified to do it, then they are the preferred source. Well, isn't there a difference between... They're both MDs, but a psychiatrist and an orthopedic surgeon? No, they sent him out to an orthopedic surgeon, but that's not the opinion that I was referring to. They also sent him out to a psychiatrist, a Dr. Solomon. And in this case, Dr. Solomon comes up with one conclusion that says he has the ability to do simple and complex tasks, he has the ability to work with peers and supervisors, and he has the ability to sustain a full-time work. Well, in this particular case, we've got physician and physician here, and the cases and the regulations indicate that the ALJ can only reject, in this case, Dr. Corey's testimony if he has specific legitimate reasons for doing so and it's based on substantial evidence. Is that your understanding as well? That is one position, Your Honor, but that is not my position. What is your position? My position is we don't have conflicting reports here. Let me go over a few things and see if you can correct me on this. My understanding is that Dr. Corey's testimony wasn't based on any recent mental status examination. He was basing it on one taken several years earlier. Is that incorrect? No, that's incorrect, Your Honor. Okay, where in the record can you point that will correct that? A mental status exam is merely a screening tool that's used on an initial evaluation. I understand that, but that was his examination. The doctor to whom your client was sent was doing a current then evaluation, was he not? Correct. Okay, and he contradicted Dr. Corey's testimony, but what I'm saying is there is one element is one is a recent examination, the other one is based upon one done a number of years before. I'm not saying he didn't have any basis for relying on it. I'm simply saying the examination by Dr. Corey was done a number of years previously. You're saying that's wrong. I am, Your Honor. Dr. Corey was seeing Mr. Tolstam every two to four weeks. Okay, so there wasn't Dr. Tolstam did not do a new initial evaluation when he made his opinion that he was limited to working three to four hours a day, but he based that opinion on his regular treatment. Okay, let's go to a second point. His conclusion was based on a number of factors outside of his specialty. For example, his wholesome physical condition and vocational factors. What did Dr. Corey know about those? That's not his specialty, is it? Well, Dr. Corey is an M.D., and Dr. Corey was following Mr. Tolstam's medical treatment in that his medical treatment impacted his mental status. Okay, you say he was following. I mean, he didn't conduct any exams of his own, did he? He didn't examine Mr. Tolstam's knees or his shoulders. I understand. And did he have any training in vocational rehabilitation or vocational factors? No, Your Honor, but there's nothing in the record that shows that he considered vocational factors. Okay, I thought it specifically said that it was based on factors outside his specialty, such as those that we just indicated. The judge said that, but he doesn't support that with anything. It's a mere unsupported conclusion. He doesn't point to where in the record Dr. Corey's report is based on vocational considerations. What impact does the fact that Dr. Corey's opinion varied with Tolstam's admitted daily activities have on this case? It has no impact whatsoever because, once more, that's an unsupported conclusion. The judge doesn't point to what daily activities contradict the three- to four-hour restriction. So you're saying that that doesn't constitute substantial evidence? Absolutely not. It's not even close. The argument would be that Dr. Corey's basically talking about his capacity to do work with his head because he's basically relying on a psychiatric evaluation. Correct, but his mental status is impacted by his pain. Of course. So, yes, he is considering his ability to sustain work and concentration, but he is entitled to consider the impact the pain would have on his concentration. I just want to confirm that I'm understanding this correctly. Dr. Solomon has a report dated February 14, 2004, and I gather it's based entirely on one in-the-office interview with Mr. Tolstam, is that it? That's correct, Your Honor. And we have an evaluation. The last one in the record that I've seen, Dr. Corey, is a little more than a year later, 2005. And in 2005, Dr. Corey, his assessment is that, quote, the patient continues to suffer from temporary total disability largely based on psychiatric factors. Correct, and it's not the temporary total disability that's really the – his statement of temporary total disability that's at issue, because that's a workers' comp term of art. The real point that's at issue is the fact that he limits Mr. Tolstam's ability to do simple work to three to four hours a day. That's at the end of that same paragraph. Correct. And I think that the reason that I disagree with a specific and legitimate standard here is the ALJ rejects Dr. Solomon's opinion. Dr. Solomon said that – We're in the record for – Put my nose in that, would you? Okay, Your Honor. I would – he doesn't reject it specifically. He rejects it in that he comes to different conclusions regarding his limitations. Dr. Solomon finds that he can do simple and complex works, while the judge finds he's limited to simple repetitive tasks. That's in the excerpt of records at page 11. Dr. Solomon says he's okay to work with coworkers and supervisors, while the ALJ says he can only have limited contact with coworkers, supervisors, and the public. So even though there's an appearance of a conflict, okay, the ALJ does not cite Dr. Solomon as a reason for rejecting Dr. Corey, because the ALJ doesn't really accept Dr. Solomon's opinion. Is there anything that requires 100 percent acceptance? It's not that the ALJ went beyond what Dr. Solomon said. He may have weighed both and decided the answer is someplace between, albeit much farther toward Dr. Solomon's side. But is there anything that precludes doing that? No, there isn't, if it's explained, Your Honor. And it isn't in this case. I'd like to reserve any further time for rebuttal. Okay. Let's hear from the government. Good morning, Your Honor. This is Eric Chin for the commissioner. As far as the response to counsel's points that he raised, if I could put this in context, this is a 45, 46-year-old man. If you could keep your voice up, please. Certainly. It's a 45, 46-year-old man who had a horrific fall. He fell on his knees. He hurt his neck, his back, his knees, his legs. We found him disabled based on his physical impairments. We treated him as presumptively disabled for about a year and assessed his medical records and saw that he was still disabled. But as of October 2004, our doctors, his doctors, were all saying, and even the claimant is saying, he's getting back to doing what he did. He's riding his bike. He's driving. He's going to the gym five days a week. He testified he does the cooking, cleaning, shopping with his girlfriend, all the housework. He didn't say he does all the housework. He says he can cook. He can prepare meals. He does cleaning. I meant all in the sense that he didn't identify anything that he can't do in their household.  He comes back from the gym, and after he's come back from the gym, he has to lie down because of the pain. You're describing someone who's just walking around without any difficulty and everything's fine. That's not quite what his testimony is. Certainly. At the same time, the credibility finding in this case is that he's not credible as of that October 2004 date forward, and counsel doesn't challenge that finding. What does it say, not credible? It would be, as of record, page 10 in finding 5, the last sentence in the page. Allegations of degree of his impairments rejected as not credible. Okay. Thank you. To address Dr. Corey's opinion, Dr. Corey's opinion conflicts with Dr. Solomon's opinion. They're both matters of record. They conflict right off the bat because Dr. Solomon's opinion is that the claimant is capable of working eight hours a day, that is, working an entire work day. Dr. Corey's opinion is that he could only sustain the ability to handle simple, repetitive instructions for three to four hours a day. There's a head-on conflict. Sure. Under the case law, the commissioner, to reject that opinion, we have to provide specific and legitimate reasons supported by substantial evidence. The ALJ did that in this case. He did it by effectively looking at what the regulations require. 404.15.27 lays out the factors for weighing medical opinions. In this case, a number of those factors apply. The first, the most important, is how well supported the opinion is. Dr. Corey's records, treatment records, they start off with a mental status exam that showed that the claimant had normal insight and judgment much earlier, 2002. His treatment records, although he treated him twice a month for a while and then once a month, he was conducting medication management and some cognitive behavioral therapy. His records don't record any objective findings or any mental status tests or any other tests, whether even a psychological. This is Corey's records. That's correct, Your Honor. Well, that may be right in the sense of specific tests, because I don't see specific tests. But he's treating him for severe depression, treating him for addiction to painkilling drugs, treating him. I don't know whether treating him for alcoholism, but he clearly had an alcohol problem for a period. He gets clean. I mean, he's treating him for a whole range of ailments, including quite severe depression. So for you to say, but his records are inadequate to show that he's got some mental difficulties because there's no test there. There may be no test there, but Dr. Corey knows this man very well, and he knows a lot about his psychological difficulties. Yes, and the distinction in looking at impairments is you can establish the impairment, and then the question is to what extent does the impairment cause functional limitations. There's nothing in Dr. Corey's records that lay out why this claimant would be limited to three to four hours of concentration. Now, if the problem is that Dr. Corey doesn't have any tests like that, why is that not a problem with Dr. Solomon, whose evidence and evaluation is based on one hour in-office interviews, as far as I can tell? Well, there are two responses to that, Your Honor. One is Dr. Solomon did perform a mental status exam. He's an examining physician. He has findings, independent findings, that support his opinion. Now, when you say he performed an exam, what was the nature of that exam? He asked him what spilt milk meant? I'm sorry? He asked him what the expression spilt milk meant? No. He did ask him that, but is that the sort of test you're referring to? Certainly. Memory, the serial threes, I'll tell you three things. I'll ask you to repeat them in five minutes, ten minutes. So the test you're talking about is the test that's reflected in his report? Yes. So he asked him the three things. He asked him what's this expression mean, what's that expression mean? Whatever he asked is reflected in his report. So there's no test beyond what's reflected in the narrative of that report? No. Correct, okay. But the second response is that... ...is identified as being done by Dr. Corey at the outset of Dr. Corey's treatment? I believe so, Your Honor. And counsel for plaintiff described that as being an intake, the kind of thing you do at the beginning. What are we to make of the fact or what significance could there be in the fact that Dr. Corey has seen this man over a period of time and doesn't need an intake exam? Some other doctor comes along, does an intake exam. It seems a little odd to me to say, well, because he's done an intake exam, he's got a better position to say when, in fact, he's only had the one hour with the person as against years of treatment. Certainly, Your Honor. It's in the nature of an intake exam. That is, it's performed at intakes. It's also performed throughout treatment at different times. It depends on the practitioner to get objective measurements as treatment goes along. There's nothing, I'm sorry, the second response to your question, Judge, is that why is that a bigger problem for Dr. Solomon or for Dr. Corey than Dr. Solomon that Dr. Corey doesn't have any current findings? That goes to the factors, the regulatory factors to weigh opinions. In this case, the biggest problem is the lack of objective findings to support his opinion. The second is? Does it say you want him to ask questions about spelt milk, too? It's not unusual, Your Honor. How would that test speak to the duration question, the question of whether this person could work more than three or four hours or can concentrate more than three or four hours a day? There are tests that measure your ability to concentrate. Did Dr. Solomon do any of those tests? I do not know, Your Honor. I remember looking at the test. Did Dr. Solomon conduct any tests that Dr. Corey did not? I'd have to pull it out and compare it, Your Honor. I can't answer that right now. And Corey had the ongoing treatment of Mr. Tolman. Doesn't that create something of a problem of the substantial evidence that the government has produced here? I mean, basically, you've got somebody who dealt with him for a long time, conducted the same test, is ongoing, and you've got a one-shot, one-hour deal from the government. They're contradictory. Why would the Solomon test be any more conclusive than Dr. Corey's initial test? I think you're focusing on something that we didn't set forth, Your Honor. That you didn't what? That we didn't advocate. The analogy, it didn't use Dr. Solomon's findings to reject Dr. Corey's opinion. What did he rely upon? You asked for the substantial evidence. Substantial evidence is more than a scintilla that a reasonable person could agree with. It can also be the absence of evidence, of supporting evidence. In this case, Dr. Corey's opinion suffers from these factors. It's not well supported. It's inconsistent with the record. It's inconsistent with. You say inconsistent with the record. What record are you talking about that it's inconsistent with? The record as a whole, Your Honor. What part of the record? Which includes the claimant's testimony and his statements to Dr. Solis. Now, when you say inconsistent with his testimony, in what respect is Dr. Corey's evaluation inconsistent with the claimant's testimony? Because the activities of daily living that he described. But those activities are consistent with what Dr. Corey says. We've gone over what his activities are. He does go to the gym five days a week. He says when he comes home he lies down. He does do. He can't prepare his own meals. He can't drive a car and so on. But Dr. Corey isn't talking about physical things. He's talking about mental capacity. So tell me more what's in the record that's contradicting what Dr. Corey has said. The only other medical opinions in the record concerning the claimant's mental capacity would be Dr. Solis and the state agency physician's opinions. Both, actually three, there were two reviewing physicians. All three of those physicians effectively determined the claimant had a non-severe impairment. They didn't say that he didn't have depression. They said based on the record evidence there was not sufficient evidence, excuse me, that the evidence showed that the mental limitations were not significant in terms of the ability to do the basic work that's happening. One of the things that the ALJ faults Dr. Corey for in his March 2005 evaluation and then opinion is that Dr. Corey did not take into account Dr. Solomon's view a year earlier. Why should he have taken into account Dr. Solomon's view when what his job is to evaluate Mr. Tolstoy rather than to do anything else? Why is that a fault on the part of Dr. Corey that he doesn't say, well, Dr. Solomon says X? I believe what the ALJ was saying wasn't Dr. Corey's fault that he did not see the entire record because it's not his obligation to ask for every treating record or every report that the claimant's ever produced. But it's a statement that in the ALJ's position, looking at the record, it would have changed, it likely would have changed, that's the inference, that it likely would have changed Dr. Corey's opinion. How do we know that it would have likely changed Dr. Corey's opinion? Because you're looking at, aside from Dr. Corey's treating records, you're looking at all the other statements and activities and the other examples. No, no, I'm specifically talking about, this is narrow, I'm specifically referring to the ALJ faulting Dr. Corey for not taking into account Dr. Solomon's examination, not all the rest of the record, but solely Dr. Solomon. The ALJ said that he didn't have Dr. Solomon's opinion, he wasn't aware of it. I don't see that the ALJ said that he faulted him for that. No, it was one of the reasons for rejecting Dr. Corey's opinion, specifically given by the ALJ. Yes. That sounds like you faulted him for not doing that. Saying that it's not consistent with the rest of the record, and there isn't just another piece of the record. Let me ask you one more thing that has not been made a point of by Mr. Tolstom's lawyer. I noticed that in the testimony that we had from the orthopedic doctor,  he's asked specifically, you know, what about his hands and his numbness and so on. And this is Dr. Carbone. Yeah, that's that one. I'm reading from the record. Okay, he's being asked, with regard to his symptoms, hand, which I believe were testimony primarily of numbness, do you believe that would be limited in his ability with his hands, fingering, grasping, what would limitations be? I would have, that would be very difficult. I think what he means is difficult for me to know, rather than difficult for Tolstom to do. I'm sure the numbness is secondary. I really couldn't tell you because many people have numbness, mode of strength and normal activities. I don't have any, he continues later, this is still the doctor, I don't have any information in the file which would, you know, give me an accurate guess. My own estimate is that it would be only occasional, occasional in terms of what he can do in terms of grasping with his hands. The reason I raise that is when we get to the questioning of the vocational expert, repeatedly the vocational expert is asked, I'm now on page 80 of the AR, the assumption is that he can, quote, do frequent fine manipulation and gross manipulation with his hands. I don't see anything in the record that supports that he can do that because the doctor has said, well, you know, I can't tell, and my guess is he's going to have trouble. Where does this frequent fine manipulation and gross manipulation come from as a matter of something that's in the record? Your Honor, I'd like to answer that. The problem is the issue was never raised at the… Well, I understand that it's not been raised. I'd like you to answer it if you can. And I was trying to say I can't because I prepared for this by looking at the medical, at the mental opinions, which is the issue. So you didn't reread the transcript of the hearing? I read the portions that apply to the mental impairment meditations. Okay. Then I understand that was not the focus of the brief. I preface my question and I conclude by saying I read it. Thank you. That's how I was trying to answer it. Would you like a minute? Thank you. Your Honor, Dr. Corey's opinion in this case is pivotal. When the vocational expert was asked a question of whether or not a person who was limited, as Dr. Corey said, to simple and repetitive tasks three to four hours a day, she testified that such a person would be disabled. So that establishes that Mr. Tolstam's disability did not end in October of 2004 but continued on. And that's the reason that it is the primary issue in this case because it either makes or breaks it. I mean, even if we accept the judge's physical limitations, with the inability to sustain work for more than three to four hours a day, then Mr. Tolstam is disabled. And I would ask the court to reverse the judge's decision and issue a finding that he is in fact disabled. Thank you. Thank you. Tolstam v. Astruz is now submitted for decision. That reaches the end of the list, and we're now going to loop back and start at the beginning of the list. Do we have now counsel in the courtroom for Hermes v. Holder? Hermes v. Holder. First case on the calendar, Rafat Hermes v. Holder.
judges: Fletcher W. , Clifton, Smith M.